UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| QUENTIN WALKER a/k/a QUINTIN WALKER, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| VS. | ) ) ) | No. 16-2362-JDT-cgc |
| LAUDERDALE COUNTY, ET AL., | ) ) ) | |
| Defendants. | ) ) | |

ORDER DENYING MOTION TO ENFORCE, PARTIALLY DISMISSING
COMPLAINT AND DIRECTING THAT PROCESS BE ISSUED AND SERVED
ON THE REMAINING DEFENDANTS

On May 26, 2016, Plaintiff Quentin Walker, a/k/a Quintin Walker, ("Walker"), who is currently confined at the Pemiscot County Jail in Caruthersville, Missouri, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion for leave to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) The complaint addresses Walker's previous confinement while he was a pre-trial detainee at the Lauderdale County Jail ("Jail") in Ripley, Tennessee. On June 2, 2016, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 4.) The Clerk shall record the Defendants as Lauderdale County, Officers First Name Unknown ("FNU") Glass, Dixie Duncan, FNU

Neal, FNU Geary, FNU Reed, FNU Parker, FNU Lenderman, FNU Johnson and Christy Norton. Defendants are sued in their official and individual capacities.

I. The Complaint

Walker alleges that on July 23, 2015, at approximately 10:30 p.m., Defendants Glass, Duncan, Neal, Geary, Reed, Parker, Lenderman, Johnson, and Norton "rushed" into Unit 1, where Walker was housed. (ECF No. 1 at 6.) Several of the Officers, including Defendants Johnson, Reed, and Norton, began conducting a "pat search" of another inmate, Judson Ouzts. (*Id.*) Before the search of Ouzts began, Defendant Glass, who was holding a taser throughout the encounter, motioned for Walker to come out of his area and to stay by him, and Walker obeyed. (*Id.* at 6-7.) Defendant Reed lost his balance after slamming Ouzts to the floor and began falling backwards into the area where Walker and Defendant Glass were standing. (*Id.* at 7.) Walker moved out of the way so Defendant Reed would not slam into him, but that resulted in Defendant Reed slamming into Defendant Glass and "sandwiching" Defendant Glass between Defendant Reed and the wall. (*Id.*)

Defendant Reed got up and went back toward inmate Ouzts, who was on the floor with several other officers on him. (*Id.*) Defendant Glass, without first giving Walker any verbal orders or directives, allegedly began tasing Walker in his back and ribs on the right side. (*Id.*) Defendant Parker then allegedly grabbed Walker around the neck, putting Walker into a headlock and punching him in the face four or five times. (*Id.*) While Parker had Walker in the headlock, Defendant Glass allegedly continued to tase Walker. (*Id.*) Walker alleges that Defendant Johnson grabbed him around his legs,

2

Defendant Neal also tased Walker, and Defendant Duncan sprayed Walker with mace. (*Id.* at 7-8.) After Walker was sprayed with mace, the Defendants stopped applying force because they also were coughing and choking from the spray; however, Defendant Parker allegedly continued to hold Walker in the headlock until Defendant Glass said, "thats [sic] enough." (*Id.* at 8.)

Walker states he does not know whether Defendants Geary, Reed, Lenderman, or Norton actually participated in the force; however, he does allege they had the opportunity to intervene and stop the incident but failed to do so. (*Id.*) Further, Walker alleges he was not resisting in any way during this incident, did not provoke the use of force, and was not given any verbal orders that he refused to obey. (*Id.*) He states the Defendants were not trying to place him in handcuffs during the incident and did not handcuff him after the incident. (*Id.*)

Immediately after the incident, Walker, inmate Ouzts and a third inmate were removed and placed in the court holding area of the Jail, in separate cells. (*Id.*) Approximately thirty minutes later, Defendants Glass, Duncan and Neal returned to the court holding area and asked Walker if he was hurt anywhere. (*Id.* at 8-9.) Walker alleges he replied that he could not breathe, his face was burning, his neck was hurting, and he wanted to get washed up, but Defendant Glass told him they would be back in a "little bit." (*Id.* at 9.) After they left, Walker alleges he yelled for help because he was having trouble breathing and his face, eyes, and nose felt like they were on fire. (*Id.*) Walker began to vomit, allegedly due to the effects of the mace. (*Id.*) Other inmates also yelled for the officers to return and help Walker. (*Id.*) Roughly two hours after Walker

3

was placed in the holding cell, Defendant Neal returned to put Walker's mattress and property in the cell. (*Id.*) Despite Walker allegedly informing Defendant Neal that his face was still burning and he was having trouble breathing, and despite that Defendant Neal noticed Walker had thrown up, Defendant Neal gave Walker the mattress and left. (*Id.*) Walker further alleges that he continued to tell Defendants Neal and Geary that he needed medical attention each time they walked by, but they continued to ignore him. (*Id.* at 9-10.) At approximately 2:30 a.m. on July 24, 2015, Defendant Geary saw Walker on the floor and that Walker had vomited and radioed for another officer to come to the cell; Defendant Geary also called an ambulance. (*Id.* at 10.) When the paramedics arrived, Defendant Neal told them that Walker was fine and had only been in the cell for an hour. (*Id.*)

Defendant Lenderman and Mr. Duncan, the husband of Defendant Duncan, accompanied Walker to the hospital. (*Id.*) Walker alleges that Mr. Duncan, who is not named as a defendant, told the nurses and the doctor that Walker was fighting at the jail and that his injuries stemmed from the fight. (*Id.*) Walker's injuries were examined and treated, and he received a cat-scan of his skull, neck and back. (*Id.*) He was released from the hospital about 6:00 a.m. on July 24, 2015, and returned to the Jail. (*Id.*) Walker alleges that his injuries included a swollen and bruised right eye; taser burns on his ribs and back; pain in his neck, throat and lower back from the physical force; and extreme and severe burning of his face, eyes, nose and mouth from the chemical agent. (*Id.* at 10-11.) Walker contends that Defendants' refusal to alleviate his pain by allowing him a shower or prompt medical attention made his pain more severe. (*Id.* at 11.)

4

Walker states that Lieutenant ("Lt.") Elizabeth Kiestler, who is not named as a defendant, took pictures of Walker's injuries but said that she could not see taser burns on Walker's left rib area. (*Id.*) On July 24, 2015, Defendant Norton took pictures of the taser burn on Walker's left rib area and sent them Lt. Kiestler. (*Id.*) On July 28, 2015, Walker was seen by Dr. Crown, who also is not named as a defendant, at the Jail and was prescribed Ibuprofen and Tylenol. (*Id.*)

Walker seeks compensatory and punitive damages for his physical and emotional injuries. (*Id.* at 15-16.)

On May 26, 2016, Walker filed a motion to enforce in which he seeks to enforce an injunction issued on April 1, 1998. (ECF No. 3.) A search of the Court's records indicates that Walker likely is referring to *Davis, et al. v. Sutton, et al.*, No. 93-2004-JPM (W.D. Tenn.), a class action suit that was filed to remedy certain constitutional deficiencies at the Lauderdale County Jail. Any attempt to enforce the relief granted in the *Davis* matter should be filed in that case. Therefore, the motion to enforce is DENIED.

## II. Analysis

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

    (1)    is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

    (2)    seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies the standards under Federal Rules of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827

6

(interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Rawlings*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Rawlings v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the

7

rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

Walker filed his complaint on the court-supplied form for actions under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Walker's claims against the Defendants in their official capacity are claims against their employer, Lauderdale County, which is already a named Defendant. When a § 1983 claim is made against a municipality, the court must analyze two distinct issues: (1) whether plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The second issue is dispositive of Walker's claims against Lauderdale County.

A local government "cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691 (1978) (emphasis in original); *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691-92; *Deaton v. Montgomery Co., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "Where a government 'custom has not received formal approval through the body's official decisionmaking channels,' such a custom may still be the subject of a § 1983 suit." *Alkire*, 330 F.3d at 815 (quoting *Monell*, 436 U.S. at 690-91). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Co. v. Dodson*, 454 U.S. at 326 (citation omitted)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S.

112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in original).

Although civil rights plaintiffs are not required to plead the facts demonstrating municipal liability with particularity, *Leatherman v. Tarrant Cnty Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993), the complaint must be sufficient to put the municipality on notice of the plaintiff's theory of liability, *see, e.g.*, *Fowler v. Campbell*, No. 3:06CV-P610-H, 2007 WL 1035007, at *2 (W.D. Ky. Mar. 30, 2007); *Yeackering v. Ankrom*, No. 4:05-CV-00018-M, 2005 WL 1877964, at *2 (W.D. Ky. Aug. 5, 2005); *Oliver v. City of Memphis*, No. 04-2074-B, 2004 WL 3316242, at *4 (W.D. Tenn. Dec. 2, 2004); cf. *Raub v. Correctional Med. Servs., Inc.*, No. 06-13942, 2008 WL 160611, at *2 (E.D. Mich. Jan. 15, 2008) (denying motion to dismiss where complaint contained conclusory allegations of a custom or practice); *Cleary v. Cnty of Macomb*, No. 06-15505, 2007 WL 2669102, at *20 (E.D. Mich. Sept. 6, 2007) (same); *Morningstar v. City of Detroit*, No. 06-11073, 2007 WL 2669156, at *8 (E.D. Mich. Sept. 6, 2007) (same); *Chidester v. City of Memphis*, No. 02-2556 MA/A, 2006 WL 1421099, at *3 (W.D. Tenn. June 15, 2005). The allegations of the complaint fail to identify an official policy or custom which caused injury to plaintiff. Instead, it appears that Walker is suing Lauderdale County because he was confined in a County institution and the County employed persons who allegedly violated his rights.

Walker's complaint alleges that Defendants Glass, Duncan, Parker, Johnson, and Neal subjected him to excessive force while Defendants Geary, Reed, Lenderman, and Norton did not intervene. The Supreme Court has held, in *Kingsley v. Hendrickson*, 135

S. Ct. 2466 (2015), that excessive force claims brought by pre-trial detainees must be analyzed under the Fourteenth Amendment's standard of objective reasonableness, rejecting a subjective standard that takes into account a defendant's state of mind. *Id.* at 2472-73. For purposes of screening, Walker has alleged a plausible claim for excessive force in violation of the Fourteenth Amendment against Defendants Glass, Duncan, Parker, Johnson and Neal.

With regard to the claims for failure to protect claim and denial of medical care, such claims if brought by convicted prisoners arise under the Eighth Amendment, which prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). However, in the case of pre-trial detainees such as Walker, "the 'cruel and unusual punishment' proscription of the Eighth Amendment to the Constitution does not apply," because "as a pre-trial detainee [the plaintiff is] not being 'punished,'" *Cuoco v. Moritsugu,* 222 F.3d 99, 106 (2d Cir. 2000). Instead, a person detained prior to conviction receives protection against mistreatment at the hands of prison officials under the Due Process Clause of the Fourteenth Amendment if held in state custody. *Liscio v. Warren,* 901 F.2d 274, 275–76 (2d Cir.1990). *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009).

Notwithstanding the decision in *Kingsley* holding that excessive force claims brought by pre-trial detainess must be analyzed under the Fourteenth Amendment's reasonableness standard, the court will analyze Walker's claims for failure to protect and lack of medical care under the Eighth Amendment's deliberate indifference standard. Even after *Kingsley*, the Sixth Circuit has applied the deliberate indifference standard to

11

claims concerning an inmate's health and safety to pre-trial detainees. *See Morabito v. Holmes*, 628 F. App'x 353, 356-58 (6th Cir. 2015) (applying the objective reasonableness standard to pre-trial detainee's excessive force claims and the deliberate indifference standard to denial of medical care claim).

An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Williams v. Curtin*, 631 F.3d at 383; *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010). The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298.

To satisfy the objective component of an Eighth Amendment claim, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005), or that he has been deprived of the "'minimal civilized measure of life's necessities,'" *Wilson*, 501 U.S. at 298 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *see also Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." *Hudson*, 503 U.S. at 9. "'[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'" *Leary v. Livingston Cnty.*, 528 F.3d 438, 442 (6th Cir. 2008) (quoting *Farmer*, 511 U.S. at 833); *see also Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 512 (6th Cir. 2001) (same).

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 297, 302-03. To establish liability under the Eighth Amendment for a claim based on failure to prevent harm to a prisoner, the plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835.

Because Walker alleges that Defendants Geary, Reed, Lenderman, and Norton had the opportunity and ability to stop the excessive force against him but failed to do so, the Court also finds that Plaintiff has stated a plausible claim against these Defendants for failure to protect.

Under *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,'. . . proscribed by the Eighth Amendment." However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate

13

indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id*., at 106.

Walker alleges that even after hearing Walker's repeated requests for medical attention and seeing that Walker had vomited, Defendants waited until 2:30 a.m. to call for needed medical care, which was provided at the hospital. (ECF No. 1 at 8-11.) While Walker does allege that the delay in receiving medical care caused the pain from his injuries to be more severe, at least temporarily (*id.* at 11), he does not allege that the delay exacerbated or caused complications with regard to the injuries themselves. The initial altercation allegedly began at 10:30 p.m. on July 23, 2015, and at 2:30 a.m. on July 24, 2015, an ambulance was called. (*Id.*) In these particular circumstances, the Court finds that the delay of a few hours in the provision of medical care does not state a plausible claim that Defendants acted with deliberate indifference.

### III. Conclusion

The Court DISMISSES all of Walker's claims against Defendant Lauderdale County and his claims against all of the Defendants for denial of medical care pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

It is ORDERED that the Clerk shall issue process for Defendants Glass, Duncan Parker, Johnson and Neal on Walker's claim of excessive force and for Defendants Geary, Reed, Lenderman, and Norton on Walker's claim for failure to protect and shall deliver that process to the U.S. Marshal for service. Service shall be made on Defendants Glass, Duncan, Parker, Johnson, Neal, Geary, Reed, Lenderman and Norton pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and

(10), either by mail or personally if mail service is not effective. All costs of service shall by advanced by the United States.

It is further ORDERED that Walker shall serve a copy of every subsequent document he files in this cause on the attorneys for Defendants Glass, Duncan, Parker, Johnson, Neal, Geary, Reed, Lenderman and Norton or on any unrepresented Defendant. Walker shall make a certificate of service on every document filed. Walker shall familiarize himself with Federal Rules of Civil Procedure and this Court's Local Rules.[1]

Walker is reminded that he must promptly notify the Clerk, in writing, of any change of address or extended absence. Failure to comply with these requirements, or any other order of the Court may result in the dismissal of this case without further notice.

IT IS SO ORDERED.

                                      s/ **James D. Todd**  
                                      JAMES D. TODD  
                                      UNITED STATES DISTRICT JUDGE

---

[1] A copy of the Local Rules may be obtained from the Clerk. The Local Rules are also available on the Court's website at www.tnwd.courts.gov/pdf/content/LocalRules.pdf.